David J. Jordan (1751)
David J. Williams (09186)
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation sole; LDS FAMILY SERVICES, a Utah Non-Profit Corporation,<br><br>                    Plaintiffs,<br><br>     v.<br><br>RJ and MM, individuals<br><br>                    Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Civil No. 2:15-cv-00453-PMW<br><br>The Honorable Magistrate Judge Paul M. Warner |

Pursuant to 28 U.S.C. § 2201, Plaintiffs, The Corporation of the President of The Church of Jesus Christ of Latter-day Saints ("COP") and LDS Family Services ("LDSFS"), through their attorneys, bring this action for declaratory relief against Defendants RJ and MM ("Doe Defendants[1]") and allege as follows:

**NATURE OF ACTION**

---

[1] RJ and MM (hereinafter "Doe Defendants") have alleged that they were the victims of sexual abuse while they were minors.  This complaint uses fictitious names to protect their privacy.

1. On March 22, 2016, Doe Defendants commenced a lawsuit (the "Tribal Court Action") in the Navajo Nation District Court, District of Window Rock, Arizona (the "Tribal Court") for injuries allegedly suffered by Doe Defendants while living in Utah during their participation in an LDS Church program called the Indian Student Placement Program (the "ISPP").

2. In the Tribal Court Action, Doe Defendants allege that jurisdiction is proper in that venue. Plaintiffs here deny that the Tribal Court has subject matter jurisdiction.

3. In this case, Plaintiffs seek a declaratory judgment that the Tribal Court lacks subject matter jurisdiction over them in the Tribal Court Action.

## PARTIES

4. COP is a corporation incorporated under Utah law and headquartered in Utah. It was named as a Defendant by Doe Defendants in the Tribal Court Action.

5. LDSFS, formerly known as LDS Social Services, is a corporation incorporated under Utah law and headquartered in Utah. LDS Social Services previously operated the ISPP. LDSFS is named as a Defendant in the Tribal Court Action. (COP and LDSFS are hereinafter referred to as the "Church Entities.")

6. Doe Defendants are enrolled members of the Navajo Tribe, and reside within the boundaries of the Navajo Nation.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this is a civil action presenting a question arising under the laws and treaties of the United States.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the alleged acts and omissions giving rise to the claim occurred in the State of Utah.

## GENERAL ALLEGATIONS

9. In the Tribal Court Action, Doe Defendants claim that, in the late 1970's and early 1980's, they participated in the ISPP; that, as part of the ISPP, they agreed to be placed in the homes of LDS Church members outside the Navajo Reservation to attend public school, and that, while living in those homes, they were sexually assaulted. *See* Amended Complaint, attached hereto as Ex. A, at ¶¶ 7, 14-24, 27.

10. Doe Defendants do not claim that the alleged abuse occurred within the reservation boundaries or on property owned by the Navajo Tribe.

11. With regard to actions that purportedly occurred on the reservation, Doe Defendants allege as follows:

    a. "The decision to remove Plaintiffs from their families was made by case workers and/or employees and/or agents of Defendants while on the Navajo Nation." *Id.* at ¶ 12;

    b. On two occasions, once at a church and once at his home, "RJ disclosed the abuse to . . . . an employee of LDS Social Services." *See id* at ¶ 17; and

    c. "The negligent acts of repeatedly failing to warn Plaintiffs and their families, failing to report ongoing sexual abuse to police, placing Plaintiffs in dangerous homes etc., occurred within the Navajo Nation." *Id* at ¶ 43.

12. Tribal members who wished to participate in the ISPP did so voluntarily with the agreement of their families. LDS Social Services maintained an office in Cedar City, Utah with regional responsibility for the ISPP, including working with members of the Navajo Nation. Decisions regarding the placement of participating tribal members from the part of the

reservation where Doe Defendants lived were made by LDS Social Services employees operating from their office in Cedar City and Salt Lake City, with input from the ecclesiastical leaders of the host families where the tribal members were placed.

13. Doe Defendants assert eight causes of action in the Tribal Court Action stemming from the abuse they allegedly suffered while participating in the ISPP: (1) child sexual abuse; (2) assault and battery, (3) negligence, (4) negligent supervision/failure to warn, (5) intentional infliction of emotional distress; (6) equitable relief; (7) common law nuisance and request for injunctive relief; and (8) violations of Navajo common law. *See* Compl. ¶¶ 26-71.

14. The Church Entities' response to the Amended Complaint in the Tribal Court Action is currently due on June 10, 2016.

## **CLAIM FOR RELIEF**
**(Declaratory Judgment)**

15. Plaintiffs hereby incorporate by reference the allegations set forth above.

16. An actual controversy has arisen regarding whether the Church Entities are subject to the jurisdiction of the Tribal Court.

17. Whether an indian tribe has compulsory jurisdiction over non-members in a civil action is a federal question. *See Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008).

18. Tribal jurisdiction is limited as a matter of federal law. Unless a federal statute or treaty grants jurisdiction expressly, "Indian tribes must rely upon their retained or inherent sovereignty." *See Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 649-50 (2001).

19. In this case, no federal statute or treaty expressly grants jurisdiction to the Tribal Court.

20. As a general rule, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana v. United States*, 450 U.S. 544, 565 (1981).

21. While the general rule set forth in *Montana* is subject to two limited exceptions, those caveats only apply to conduct occurring *on the reservation*. *See, e.g., Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087, 1091 (8th Cir. 1998) ("Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring outside their reservations."); *see also Philip Morris USA, Inc. v. King Mountain Tobacco Co, Inc.*, 569 F.3d 932, 938 ("[T]ribal jurisdiction is, of course, cabined by geography: The jurisdiction of tribal courts does not extend beyond tribal boundaries." (citing *Atkinson Trading Co. v. Shirley,* 532 U.S. 645, 658 n. 12, 121 S. Ct. 1825 (2001).)

22. Tribal courts have no jurisdiction over conduct that does not occur on the tribe's reservation. *See Plains Commerce Bank*, 554 U.S. at 332 ("*Montana* and its progeny permit tribal regulation of non-member *conduct* inside the reservation…." (emphasis in original).)

23. Because the conduct giving rise to the Tribal Court Action did not occur within the borders of the Navajo reservation, no exception to the general rule set forth in *Montana* applies and the Tribal Court lacks jurisdiction to hear the Tribal Court Action.

24. Moreover, Doe Defendants' requested relief in the Tribal Court Action would infringe on the Church Entities' First Amendment rights in a jurisdiction where those rights have no force. Doe Defendants request an injunction imposing world-wide ecclesiastical policy changes. The requested relief also asks that the Church Entities be enjoined from challenging the constitutionality of civil or criminal laws relating to child abuse reporting, the repeal of the

clergy-penitent privilege … or similar legislation or law in [Arizona or] any other state or jurisdiction …."  Compl. ¶ 60(e).

25. Such relief would violate the First Amendment bar against judicial interference in matters of church "discipline, faith, internal organization or ecclesiastical rule, custom, or law." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976) (citation omitted); *accord Bryce v. Episcopal Church in the Diocese of Colo.,* 289 F.3d 648, 655 (10th Cir. 2002). (recognizing that churches have "autonomy in making decisions regarding their own internal affairs.")  What is more, prohibiting the Church Entities from speaking in opposition to legal measures inimical to its interests would be an unmistakable instance of viewpoint discrimination in violation of free speech, *see Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995), and a prior restraint on core political speech.  *See Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971) (prior restraint); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (political speech).

26. Another reason for restricting tribal jurisdiction over the Church Entities is that nonmember litigants do not enjoy the federal constitutional right of due process or the guarantees of the Bill of Rights in Tribal Court.  *See Plains Commerce Bank*, 554 U.S. at 337 ("The Bill of Rights does not apply to Indian tribes.") (citation omitted); *Duro v. Reina*, 495 U.S. 676, 693 (1990) (focusing on "consent and the protections of citizenship" is proper because "[i]t is significant that the Bill of Rights does not apply to Indian tribal governments.").  Indeed, *Montana's* "presumption against tribal-court civil jurisdiction squares with … an overriding concern that citizens who are not tribal members be 'protected … from unwarranted intrusions on their personal liberty.'"  *Nevada*, 533 U.S. at 384 (Souter, J., concurring) (quotation omitted).

Unless *Montana* and its exceptions are narrowly confined, as the Supreme Court has held they should be, the Church Entities will be compelled to defend themselves in a tribal forum where their constitutional rights are openly attacked.

27.   No act giving rise to the claims in Doe Defendants' complaint occurred on the reservation.  The decisions regarding placement of tribal members with host families were made outside of the reservation.  What is more, the allegation that abuse was disclosed to an agent of the Church Entities while on the reservation and that a failure to report such abuse occurred on the reservation are not sufficient to allow the Tribal Court to exercise jurisdiction because they are not "acts" occurring on the reservations.  They are not "acts" at all, but instead, alleged failures to act.  As such, there was no *conduct* occurring on the reservation that would trigger an exception to the *Montana* rule and, therefore, the judicial powers of the Navajo Nation do not extend to the Church Entities.

28.   While a party challenging tribal jurisdiction generally must exhaust such challenges before the tribal courts before contesting tribal jurisdiction in federal district court (*see Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 856-57 (1985),) "exhaustion is not an unyielding requirement," and the requirement does not apply when compelling a party to challenge jurisdiction before tribal courts "would serve no purpose other than delay." *Strate v. A-1 Contractors*, 520 U.S. 438, 449, 459-60 nn. 7, 14 (1997).

29.   Requiring the Church Entities to exhaust their jurisdictional challenges in tribal court when *none* of the alleged injuries suffered by the Doe Defendants occurred on the reservation "would serve no purpose other than delay."

32. As such, the Church Entities are entitled to declaratory relief under 28 U.S.C. § 2201, which authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration." Rule 57 of the Federal Rules of Civil Procedure specifies that those Rules "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Fed. R. Civ. P. 57. An action like this for a declaratory judgment is the accepted procedural vehicle for resolving whether tribal courts have compulsory jurisdiction over non-members. *See, e.g.*, *Strate*, 520 U.S. at 444; *Nevada*, at 357.

## PRAYER FOR RELIEF

WHEREFORE, the Church Entities pray for judgment against Defendants as follows:

1. For a judgment declaring that the Tribal Court lacks subject matter jurisdiction over the Church Entities in the Tribal Action;

2. For an injunction prohibiting Defendants from proceeding with the Tribal Action in Tribal Court; and

3 For such other legal and equitable relief as this Court deems just and proper.

DATED: May 31, 2016.

                        STOEL RIVES LLP


                        /s/ David J. Williams
                        David J. Jordan
                        David J. Williams

                        Attorneys for Plaintiffs