IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation; and LDS FAMILY SERVICES, a Utah Non-Profit Corporation, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | Case No. 2:16-cv-00453-RJS-BCW |
| v. | Judge Robert J. Shelby |
| RJ, MM, BN, and LK, individuals, | Judge Brooke C. Wells |
| Defendants. | |

This case relates to lawsuits presently pending before the Navajo Nation District Court. In those cases, Defendants RJ, MM, BN, and LK (Doe Defendants) allege that they suffered abuse years ago after Plaintiffs, the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints and LDS Family Services, placed them off-reservation with LDS families as part of the Indian Student Placement Program (ISPP).  In their Amended Complaint, Plaintiffs here seek a declaration that the Navajo Nation District Court lacks jurisdiction to adjudicate the underlying cases, and request an injunction prohibiting Doe Defendants from proceeding with their cases in Tribal Court.  Plaintiffs argue that the Tribal Court clearly lacks jurisdiction over Doe Defendants' claims, and that this court should so find now, without requiring Plaintiffs to exhaust their Tribal Court remedies by presenting their jurisdictional arguments to the Tribal Court in the first instance.

Two motions are before the court: (1) Plaintiffs' Motion for Preliminary Injunction and (2) Defendants' Motion to Dismiss.  For the reasons detailed below, the court grants Doe Defendants' Motion to Dismiss, concluding that Plaintiffs must exhaust their Tribal Court remedies before seeking relief from this court.  Because the court grants the Motion to Dismiss, it denies as moot Plaintiffs' Motion for Preliminary Injunction.

## BACKGROUND[1]

Doe Defendants filed three separate actions in the Navajo Nation District Court, District of Window Rock, Arizona.  In the cases before the Tribal Court, Doe Defendants allege injuries resulting from their placement with LDS families while participating in the ISPP between 1965 and 1983.[2]  The ISPP "continued for over forty years, ending in approximately 1990, with tens of thousands of Navajo Nation children having participated."[3]  As part of the program, Doe Defendants and their families agreed that Doe Defendants, who were children at the time, would be placed during the school year in homes of LDS Church members outside of the reservation to attend public school.  Doe Defendants allegedly suffered sexual abuse while living with these families.[4]

Doe Defendants do not claim that any of the sexual abuse at issue occurred on the reservation or on property owned by the Navajo Tribe.[5]  The parties disagree about whether any related or relevant conduct occurred on the reservation.  For example, Doe Defendants allege in their underlying complaints that the following occurred on the Navajo Reservation:

---

[1] When considering a motion to dismiss, the court accepts the well-pled allegations in the complaint as true and then "determine[s] if they plausibly suggest an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  The court sets forth the facts as alleged in Plaintiffs' Amended Complaint, except where explicitly noted.

[2] Dkt. 17 ¶¶ 1, 9.

[3] Dkt. 25 at 5.  Doe Defendants included this statement in their reply to Plaintiffs' Motion for Preliminary Injunction and Plaintiffs do not refute it.

[4] Dkt. 17 ¶ 9.

[5] *Id.* ¶ 10.

- "The decision to remove [Doe Defendants] from their families was made by case workers and/or employees and/or agents of [the Church Entities] while on the Navajo Nation."[6]

- "On two occasions, once at a church and once at his home, 'RJ disclosed the abuse to . . . an employee of LDS Social Services.'"[7]

- "The failure to warn [Doe Defendants] and their families, the failure to disclose or report sexual abuse to [Doe Defendants'] parents, police, or to child protective services occurred within the Navajo Nation."[8]

In contrast, Plaintiffs allege in their Amended Complaint in this case that:

> [d]ecisions regarding the placement of participating tribal members from the part of the reservation where Doe Defendants lived were made by LDS Social Services employees operating from their offices in Cedar City and Salt Lake City, with input from the ecclesiastical leaders of the host families where the tribal members were placed.[9]

At this stage of the case, the court is required to accept Plaintiffs' allegations as true.  The court therefore accepts for purposes of deciding Doe Defendants' Motion to Dismiss that none of the alleged abuse occurred on the reservation, and that none of the placement decisions were made on the reservation.

Doe Defendants assert eight causes of action in their Tribal Court cases:  (1) childhood sexual abuse, (2) assault and battery, (3) negligence, (4) negligent supervision/failure to warn, (5) intentional infliction of emotional distress, (6) equitable relief, (7) common law nuisance and request for injunctive relief, and (8) violations of Navajo Common Law.[10]

---

[6] *Id.* ¶ 11 (internal quotation marks omitted).

[7] *Id.*

[8] *Id* (internal quotation marks omitted).  Doe Defendants also point to additional allegations in their underlying complaints, including that "[t]he negligent acts of removing Plaintiffs from Navajo Nation and the decision to place them in dangerous homes occurred on the Navajo Nation.  Likewise, the failure to disclose to Plaintiff's parents, to police or to child protective services, about the sexual abuse that was occurring within the LPP also occurred within the Navajo Nation."  Dkt. 25 at 5.

[9] Dkt. 17 ¶ 12.

[10] Dkt. 17-2 at 7–17.

Plaintiffs responded to Doe Defendants' Tribal Court complaints by filing this federal court action.  Plaintiffs seek a declaration that the Navajo Nation District Court lacks jurisdiction to consider Doe Defendants' lawsuits.  Plaintiffs also filed a Motion for Preliminary Injunction asking this court to enjoin Doe Defendants from proceeding with their cases in Tribal Court.[11] Doe Defendants have now filed a combined Objection to the Preliminary Injunction and Motion to Dismiss.[12]

In their Motion to Dismiss, Doe Defendants argue: (1) that Plaintiffs have failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs failed to first exhaust their remedies in Tribal Court;[13] (2) that Plaintiffs' claim should be dismissed under Federal Rule of Civil Procedure 12(b)(7) because they have failed to join indispensable parties;[14] and (3) that the so-called *Brillhart* rule allows the court to stay this case pending exhaustion of Tribal Court remedies.[15]  Because the court concludes that Plaintiffs have failed to state a claim upon which relief can be granted under Rule 12(b)(6),[16] it does not reach the issue of joinder or the potential application of the *Brillhart* rule.

---

[11] Dkt. 17; Dkt. 19.

[12] Dkt. 20.

[13] *Id.* at 3.

[14] *Id.* at 10.

[15] *Id.* at 14.

[16] Although neither party addresses the issue, the court is aware of case law stating that a failure to exhaust non-judicial remedies is ordinarily construed as an unenumerated 12(b) motion, rather than one under 12(b)(6).  *See Dish Network Corp. v. Tewa*, No. CV 12-8077-PCT-JAT, 2012 WL 5381437, at *2 (D. Ariz. Nov. 1, 2012) (unpublished) ("Defendants' motion to dismiss for failure to exhaust tribal court remedies should be treated as an unenumerated 12(b) motion.  On such a motion, 'the court may look beyond the pleadings and decide disputed issues of fact.'" (citations omitted)); *A.B. ex rel. Blaik v. Health Care Serv. Corp.*, No. CIV-14-990-D, 2015 WL 6160260, at *2 (W.D. Okla. Oct. 20, 2015) (unpublished) ("A motion to dismiss for failure to exhaust non-judicial remedies is treated as an 'unenumerated' motion under Rule 12(b).  In deciding such a motion, the Court accepts as true all well-pled allegations, and, . . . may look beyond the pleadings and decide disputed issues of fact.  If the district court concludes the plaintiff has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice." (citations omitted)).  The court finds no meaningful distinction between these standards as applied to this case, and therefore applies the standard briefed by the parties.

## ANALYSIS

### I. Legal Standard

Before addressing the substance of the arguments advanced by the parties, the court must first identify the controlling legal standards. That is not an easy task in this case. Different standards govern the court's analysis of two related sets of issues. The court below explains both the legal standards that apply when deciding whether Plaintiffs must exhaust their remedies in the Tribal Court before seeking relief from this court, and the legal standards that define the scope of the Tribal Court's adjudicative jurisdiction over non-members.

### A. Exhaustion Rule and Exceptions

"The tribal exhaustion rule provides that, absent exceptional circumstances, federal courts typically 'should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted.'"[17] The Supreme Court articulated the exhaustion rule in *National Farmers Union Insurance Co. v. Crow Tribe of Indians*, stating that "examination [of jurisdiction] should be conducted in the first instance in the Tribal Court itself."[18] In that case, the Supreme Court recognized three interests advanced by requiring a litigant to exhaust their Tribal Court remedies: "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary."[19] The Tenth Circuit has taken a "strict view of

---

[17] *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1149 (10th Cir. 2011) (quoting *Bank of Okla. v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1170 (10th Cir. 1992)).

[18] 471 U.S. 845, 856–57 (1985).

[19] *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997).

the tribal exhaustion rule," holding that "federal courts should abstain when a suit sufficiently implicates Indian sovereignty or other important interests."[20]

The Supreme Court, however, has recognized four exceptions to the exhaustion rule including: "(1) where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) where the action is patently violative of express jurisdictional prohibitions; (3) where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction[; and] . . . . (4) where it is clear that the tribal court lacks jurisdiction and that judicial proceedings would serve no purpose other than delay."[21] The party invoking one of these exceptions must make a "substantial showing of eligibility."[22] Courts apply the exceptions narrowly, typically in situations "where the federal court has exclusive jurisdiction."[23]

Plaintiffs here invoke the fourth exception to the exhaustion rule. Plaintiffs claim that the Tribal Court clearly lacks jurisdiction, so requiring them to exhaust their remedies before the Tribal Court would serve no purpose other than delay.[24] In order for this exception to apply, it must be clear to the court based on the record before it that the Tribal Court lacks jurisdiction. The Tenth Circuit has further explained that this

---

[20] *Id.* (internal quotation marks omitted).

[21] *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1238 (10th Cir. 2014) (internal quotation marks omitted).

[22] *Id.*

[23] *Id.* at 1239 (internal quotation marks omitted).

[24] At oral argument, Plaintiffs additionally argued that Doe Defendants brought their eighth cause of action in bad faith. Plaintiffs contend that, while they did not clearly raise this issue in their briefing, it was implicit in their claim that the eighth cause of action had no basis in law. The court declines to consider Plaintiffs' bad faith argument because they did not raise it in the briefing in a manner that would have allowed Doe Defendants to adequately respond. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *Utah Envtl. Congress v. MacWhorter*, No. 2:08-cv-118-SA, 2011 WL 4901317, at * 16 (D. Utah Oct. 14, 2011) (unpublished) (declining to consider an argument that was not clearly raised in the plaintiff's brief when the issue "could not be identified by Defendants with any certainty, and certainly was not adequately briefed").

exception applies where it is "patently obvious" that the Tribal Court lacks jurisdiction; or where defendants in such an action cannot make a "colorable claim that [the Tribal Court] has jurisdiction."[25]  This requires the court to analyze the scope of tribal jurisdiction.

### B.  Tribal Jurisdiction Under the Montana Rule

Because Doe Defendants have identified no specific statute or treaty granting the Tribe jurisdiction over Plaintiffs' claims, the court must consider the inherent sovereign authority of the Tribe to assert adjudicative jurisdiction over non-members.  "Indian tribes [are] 'distinct, independent political communities', qualified to exercise many of the powers and prerogatives of self-government."[26]  Indeed, "Congress is committed to a policy of supporting tribal self-government and self-determination."[27]  But the "sovereignty that the Indian tribes retain is of a unique and limited character."[28]  And generally "[t]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe."[29]

*Montana v. United States* provides the starting point for analyzing the Tribal Court's jurisdiction over non-Indians.[30]  In *Montana*, the Supreme Court considered the reach of a tribe's legislative jurisdiction—in contrast to its adjudicative jurisdiction.  The Court considered whether the Crow Tribe had authority to "regulate hunting and fishing by non-Indians on lands within the Tribe's reservation owned in fee simple by non-Indians."[31]  The Court held that, while the "Crow Tribe retained power to limit or forbid hunting or fishing by nonmembers on land still

---

[25] *Thlopthlocco Tribal Town*, 762 F.3d at 1239–40.

[26] *Plains Commerce Bank v. Long Family Land & Cattle Co*, 554 U.S. 316, 327 (2008) (citation omitted).

[27] *National Farmers*, 471 U.S. at 856.

[28] *Plains Commerce Bank*, 554 U.S. at 327 (internal quotation marks omitted).

[29] *Id.* at 328 (alteration in original) (internal quotation marks omitted).

[30] 450 U.S. 544 (1981).

[31] *Strate v. A-1 Contractors*, 520 U.S. at 438, 445 (1997).

owned by or held in trust for the tribe," it "lacked authority to regulate hunting and fishing by non-Indians on land within the Tribe's reservation owned in fee simple by non-Indians."[32]

The Court in *Montana* set forth the "general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within the reservation."[33]  But the Court in *Montana* recognized two limited exceptions to this general rule:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian lands.  [First, a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements.  [Second, a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or health or welfare of the tribe.[34]

These exceptions are limited in nature and "cannot be construed in a manner that would 'swallow the rule' or 'severely shrink' it."[35]  The Court later clarified that under the first *Montana* exception there must be a nexus between the exercise of the tribe's regulatory authority—the imposition of a tax or regulation for instance—and the consensual relationship between the non-Indian and the tribe.[36]  "A nonmember's consensual relationship in one area . . . does not trigger tribal civil authority in another—it is not 'in for a penny, in for a Pound.'"[37]

---

[32] *Id.* at 446.

[33] *Id.* at 439.

[34] *Montana*, 450 U.S. at 565–66.

[35] *Plains Commerce Bank*, 554 U.S. at 330.

[36] *See Dolgencorp, Inc. v. Mississippi Band of Choctaw Indians*, 746 F.3d 167, 172 (5th Cir. 2014).

[37] *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 656 (2001).

It appears that the Court further narrowed the *Montana* exceptions in its 2008 *Plains Commerce Bank* decision.[38]  The Court there stated that the *Montana* exceptions permit tribes to regulate the activities of non-members "to the extent necessary 'to protect tribal self-government [and] control internal relations.'"[39]  The scope of this restriction, however, is currently unsettled. In *Dolgencorp, Inc. v. Mississippi Bank of Choctaw Indians*, the Fifth Circuit concluded that *Plains Commerce Bank* did not "require an additional showing that one specific relationship, in itself, 'intrude[s] on the internal relationship of the tribe or threaten[s] self -rule.'"[40]  Instead, the court concluded that it was appropriate to look to the general instead of the highly specific when determining if the activity of non-members had such an effect.[41]

An equally divided Supreme Court recently affirmed this decision.[42]  District courts, therefore, lack clear guidance about the implications of *Plains Commerce Bank* on the scope of the *Montana* exceptions.  And these implications are potentially outcome determinative in many instances.  If the specific consensual relationship between a tribal member and non-member can only be regulated if that relationship itself implicates tribal self-government and the internal relationship of the tribe, then the first *Montana* exception would seem to be severely limited.[43]

---

[38] 554 U.S. 316 (2008).

[39] *Plains Commerce Bank*, 554 U.S. at 332 (quoting *Montana*, 450 U.S. at 564) (second alteration in the original); *see also Nevada v. Hicks*, 533 U.S. 353, 361 (2001) ("Tribal assertion of regulatory authority over nonmembers must be connected to that right of the Indians to make their own laws and be governed by them.").

[40] *Dolgencorp*, 746 F.3d at 175.

[41] *Id.*  ("It is hard to imagine how a single employment relationship between a tribe member and a business could ever have such an impact.  On the other hand, at a higher level of generality, the ability to regulate the working conditions (particularly as it pertains to health and safety) of tribe members employed on reservation land is plainly central to the tribe's power of self-government.  Nothing in *Plains Commerce* requires a focus on the highly specific rather than the general.").

[42] *Dollar General Corp. v. Mississippi Band of Choctaw Indians*, 136 S. Ct. 2159 (2016).

[43] *See Dolgencorp*, 746 F.3d at 175 n.6 (noting that such a reading of *Plains Commerce Bank* would "read the first *Montana* exception out of existence" because "[i]f regulation of some consensual relationship is necessary to protect tribal self-government or to control internal relations, it would seem to fall necessarily within the second *Montana* exception"); *cf. State Farm Ins. Cos. V. Turtle Mountain Fleet Farm, LLC*, No. 1:12-cv-00094, 2014 WL 1883633,

In addition, it appears that a Tribal Court may exercise jurisdiction over a non-member only when the non-member has either implicitly or expressly consented to such jurisdiction.[44]  It is not clear to the court whether this is a stand-alone requirement or whether this requirement is inherent in the *Montana* exceptions themselves.  In either case, the party invoking tribal jurisdiction over the non-member has the burden of establishing jurisdiction under one of the exceptions to the *Montana* rule.[45]

Although *Montana* addressed only a tribe's legislative jurisdiction, in *Strate v. A-1 Contractors*[46] the Supreme Court explained that "where tribes possess authority to regulate the activities of nonmembers, [c]ivil jurisdiction over [disputes arising out of] such activities presumptively lies with the tribal court."[47]  The Court also stated that "a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction."[48]  Whether a tribe's adjudicative authority is coextensive with its legislative authority remains unsettled.[49]

"A tribe's regulation of nonmember conduct through tort law is analyzed under the *Montana* framework,"[50] a proposition the parties here do not dispute.  The Fifth and Eighth

---

at *7–8 (D.N.D. May 12, 2014) (unpublished) (rejecting State Farm's argument that in light of *Plains Commerce Bank* the consensual relationship must now be with the tribe itself rather than an individual member).

[44] *Plains Commerce Bank*, 554 U.S. at 337 (stating that because the constitution and bill of rights do not apply to Indian tribes, and because non-members have no say in tribal government, tribal "laws and regulations may be fairly imposed only if the nonmember has consented, either expressly or by his actions").

[45] *Id.* at 331.

[46] 520 U.S. 438 (1997).

[47] *Id.* at 453 (alterations in original) (internal quotation marks omitted).

[48] *Id.*

[49] *See Hicks*, 533 U.S. at 358 ("That formulation leaves open the question whether a tribe's adjudicative jurisdiction over nonmember defendants equals its legislative jurisdiction.  We will not have to answer that open question if we determine that the Tribes in any event lack legislative jurisdiction in this case.").

[50] *Dolgencorp*, 746 F.3d at 172 (citing *Attorney's Process & Investigation Services, Inc. v. Sac & Fox Tribe*, 609 F.3d 927, 938 (8th Cir. 2010) ("If the Tribe retains the power under *Montana* to regulate . . . conduct, we fail to see how it makes any difference whether it does so through precisely tailored regulations or through tort claims . . . ."); *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 939 (9th Cir. 2009) ("The *Montana* framework is applicable to tribal adjudicative jurisdiction, which extends no further than the *Montana* exceptions.")).

Circuits have clarified that "[i]n considering regulation through tort law, 'courts applying *Montana* should not simply consider the abstract elements of the tribal claim at issue, but must focus on specific nonmember conduct alleged, taking a functional view of the regulatory effect of the claim on the nonmember.'"[51]

## II.  Plaintiffs Fail to Make the Substantial Showing Necessary to Avoid the Exhaustion Rule

Having set forth the governing legal standards, the court now turns to the specific issue presented in Doe Defendants' Motion to Dismiss: whether Plaintiffs have made a plausible claim that the undue delay exception to the exhaustion rule applies in this case.  The issue is not whether the Navajo Nation District Court ultimately enjoys jurisdiction over Doe Defendants' Tribal Court claims, but instead whether Plaintiffs have met their substantial burden at this stage of the proceedings to show that it is "'clear that the tribal court lacks jurisdiction,' such that 'the exhaustion requirement would serve no purpose other than delay.'"[52]  Further, Plaintiffs request "a judgment declaring that the Tribal Court lacks subject matter jurisdiction over the Church Entities in the Tribal Court Actions"; and "an injunction prohibiting Defendants from proceeding with the Tribal Court Actions in Tribal Court."[53]  Because Plaintiffs request such broad relief, they must show that the Tribal Court clearly lacks jurisdiction over all Doe Defendants' claims.[54]

---

[51] *Id.* at 173 (quoting *Attorney's Process*, 609 F.3d at 938).

[52] *See Crowe & Dunlevy, P.C.*, 640 F.3d at 1149 (quoting *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006)).

[53] Dkt. 17 at 8–9.

[54] At oral argument, but not in their briefing, Plaintiffs asked the court to analyze the jurisdiction of the Tribal Court as to each of the causes of action individually.  Plaintiffs argued that, even if the court were to send some causes of action back to the Tribal Court for exhaustion, it would be inappropriate to require exhaustion on any claims over which the Tribal Court clearly lacked jurisdiction.  The court finds this argument unpersuasive and declines to undertake an exacting analysis of each cause of action.  Instead, the court concludes that if Plaintiffs must exhaust their Tribal Court remedies as to any of Doe Defendants' claims, it is appropriate to send the entire case back to the Tribal Court for consideration of Plaintiffs' jurisdictional defenses.

Plaintiffs did not cite any case law in support of the proposition that a district court should deny a Tribal Court the opportunity to consider its jurisdiction over all Doe Defendants' claims if the court concludes exhaustion of some claims is warranted.  The policies underlying the exhaustion rule seem to dictate that if this court is sending back some of Doe Defendants' claims, it should give the Tribal Court the opportunity to consider its jurisdiction over all

Plaintiffs argue that the Tribal Court clearly lacks jurisdiction over Doe Defendants' actions for several reasons.  First, Plaintiffs argue that the general *Montana* rule that tribal jurisdiction does not extend to non-members governs because Doe Defendants have not alleged that they were injured on Indian lands.[55]  Second, Plaintiffs argue that the even under the *Montana* exceptions it is clear that the Tribal Court lacks jurisdiction because "both exceptions require actionable conduct on tribal lands."[56] Finally, Plaintiffs contend, "the policies supporting the exhaustion rule are not served here."[57]  The court addresses each of these arguments in turn, finding none persuasive.

### A.  *Plaintiffs' Argument that the* **Montana** *Exceptions are not Implicated is Unconvincing*

Plaintiffs argue that the general *Montana* rule, not its exceptions, controls the court's jurisdictional analysis, and that under the *Montana* rule the Tribal Court clearly lacks jurisdiction over Doe Defendants' claims.  Plaintiffs maintain that the exceptions to *Montana*'s general rule "only come into play when the actionable conduct occurs on tribal lands."[58] They assert that none of the actionable conduct underlying the Doe Defendants' claims occurred on Tribal lands.

The court concludes, however, that Doe Defendants have alleged that actionable conduct underlying at least some of their claims occurred on the Navajo Reservation.  While it is undisputed that the alleged sexual assaults occurred off reservation, and the court must assume for purposes of the Motion to Dismiss that Plaintiffs made their placement decisions off reservation, Doe Defendants have still alleged that negligent acts occurred on reservation.  These

---

claims.  Considering all claims would allow the Tribal Court to better develop its jurisdictional jurisprudence, while likely causing no additional delay to the parties.

[55] Dkt. 19 at 9.

[56] Dkt. 24 at 6.

[57] Dkt. 19 at 14.

[58] Dkt. 24 at 3.

acts include Plaintiffs' alleged negligent failure to report sexual abuse, and their alleged failure to disclose abuse to the parents of Doe Defendants.[59]

Plaintiffs insist that "a purported failure to report is not *conduct* that could create tribal jurisdiction."[60]  Instead, they argue, a failure to act is non-conduct and "[c]laims of inaction cannot give rise to tribal jurisdiction."[61]  In support, Plaintiffs cite exclusively to *Plains Commerce Bank*, and quote the language from that case stating, "*Montana* and its progeny permit tribal regulation of nonmember *conduct* inside the reservation."

While the court appreciates that whether an omission gives rise to tort liability and whether an omission gives rise to Tribal Court jurisdiction are two different (if possibly related) questions, the court does not read *Plains Commerce Bank* to support Plaintiffs' broad proposition that tortious omissions are not "conduct" under a *Montana* analysis.  When discussing "conduct," the Court in *Plains Commerce Bank* distinguished between conduct on the land and the sale of the land, finding that there was tribal jurisdiction to regulate conduct on non-Indian land, but not tribal jurisdiction to regulate the sale of non-Indian land.  The Court noted that "[t]he distinction between sale of the land and conduct on it is well established in our precedent."[62]

Nowhere does the Court in *Plains Commerce Bank* discuss the distinction between a tortious act and a tortious omission in the context of a jurisdictional analysis.  Nor is it apparent to the court why, assuming causally related injury is alleged, tortious acts and omissions should be evaluated differently for jurisdictional purposes.  Because the court finds *Plains Commerce*

---

[59] Dkt. 25 at 4–5.

[60] Dkt. 24 at 5.

[61] *Id.*

[62] *Plains Commerce Bank*, 554 U.S. at 334.

*Bank* inapposite, the court concludes that Doe Defendants' allegations that tortious omissions occurred on reservation implicate the exceptions to the general *Montana* rule.

**B.   *Tribal Jurisdiction is Not Clearly Foreclosed Under the First* Montana *Exception Based on the Record Before the Court***

Having concluded that it is appropriate here to look to the exceptions to the *Montana* rule, the court next considers Plaintiffs' argument that "like the *Montana* rule itself, both exceptions require actionable conduct on tribal lands."[63]  Under the first *Montana* exception, a tribe may regulate, "through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements."[64]  In *Dolgencorp*, the Fifth Circuit recently held that the "other arrangements" contemplated need not be commercial in nature to give rise to jurisdiction.[65]  Also, the activity of the nonmember that the tribe seeks to regulate must "have a nexus to the consensual relationship itself"; and "[a] nonmember's consensual relationship in one area does not trigger tribal civil authority in another."[66]

Plaintiffs argue that "for jurisdiction to exist [under this exception], the conduct giving rise to the cause of action had to occur on tribal lands."  But as addressed above, Doe Defendants allege that tortious conduct occurred on tribal lands.  Doe Defendants allege that "Plaintiffs entered into agreements with the families of each of the Defendants, who were children at the time, to participate in the ISPP."[67]  Doe Defendants further contend, "[t]hese agreements to be the guardians of each defendant occurred while on the Navajo Nation, when Defendants were

---

[63] Dkt. 24 at 6.

[64] *Montana*, 450 U.S. at 565–66.

[65] *Dolgencorp*, 746 F.3d at 173.

[66] *Atkinson Trading*, 532 U.S. at 656.

[67] Dkt. 20 at 8 (citing Second Am. Comp. for Decl. J. ¶¶ 9–12; *see also* Pls. Exs. A, B, & C).

14

taken from their Navajo Nation homes."[68]  And as noted above, Doe Defendants also complain of the related tortious omissions of failure to warn Doe Defendants' parents and failure to report the abuse that allegedly occurred.

Jurisdictional discovery is necessary to develop the factual record before the court can conclude that the Tribal Court clearly lacks jurisdiction under the consensual relationship exception.  The existing record is significantly incomplete concerning the nature and scope of the agreements themselves, and any nexus between those agreements and the alleged conduct.  For instance, did the ISPP have any agreement with the Navajo Nation itself about the removal of Navajo children from the reservation?  What were the terms of the agreements between the ISPP and the parents of the children?  Where were these agreements formed?

Because the court cannot find that the Tribal Court clearly lacks jurisdiction based on Plaintiffs' arguments, the sparse factual record before it, and its analysis under the unsettled relevant case law, the court concludes that Plaintiffs have failed to meet their substantial burden to show that the court should apply the undue delay exception to the exhaustion rule.  In view of that ruling, the court declines to reach the second *Montana* exception.

### C.  The Policies Supporting Exhaustion would be Served by Having the Tribal Court Decide its Jurisdiction in the First Instance

Beyond the court's *Montana* analysis, the court concludes that the policy considerations favoring tribal exhaustion are amply served here by allowing the Tribal Court to first decide its jurisdiction.  As discussed above, the Supreme Court in *National Farmers* identified "three specific interests [that] are advanced by proper application of the [exhaustion] rule: (1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3)

---

[68] *Id.*

obtaining the benefit of tribal expertise if further review becomes necessary."[69]  All three interests are served here by requiring exhaustion of Tribal Court remedies.

First, exhaustion of Doe Defendants' cases before the Tribal Court will promote tribal self-government and the development of the Tribal Courts.  Requiring exhaustion will allow the Tribal Court to assess its own jurisdiction in the first instance.  As discussed above, Doe Defendants' claims present complex factual and legal issues.  Enabling the Tribal Court to carefully analyze these issues will likely advance the Tribal Court's jurisdictional jurisprudence.  Second, additional jurisdictional discovery is necessary before this court can adequately assess the Tribal Court's jurisdiction in the underlying cases.  Exhaustion will thus "promote the orderly administration of justice" by allowing the Tribal Court to fully develop this factual record.  Finally, exhaustion will provide a reviewing federal court the benefit of the Tribal Court's expertise, respecting both tribal jurisdiction and the unique causes of action alleged under Navajo Law.

CONCLUSION

Plaintiffs have failed at this stage in the proceeding to meet their substantial burden of showing that Tribal Court jurisdiction is clearly foreclosed.  While it appears that jurisdiction over certain claims—including those for direct liability for the sexual assaults—may be foreclosed, it is not clear that Tribal Court jurisdiction is clearly lacking for all of Doe Defendants' claims.  Because Plaintiffs request an injunction that would prevent Doe Defendants from proceeding in Tribal Court on any of their claims, it was Plaintiffs' burden to show that all routes to jurisdiction were clearly foreclosed.  The court GRANTS Doe Defendants' Motion to Dismiss.  (Dkt. 20.)  Plaintiffs must first exhaust their remedies in the Tribal Court before

---

[69] *Kerr-McGee Corp*, 115 F.3d at 1507.

seeking redress in this court.  The case is dismissed without prejudice.  The court DENIES as moot Plaintiffs' Motion for Preliminary Injunction.  (Dkt. 19.)

The Clerk of Court is directed to close the case.

**SO ORDERED** this 16th day of November, 2016.

BY THE COURT:

ROBERT J. SHELBY